**In the Matter of Dennis L. KUCERA, Debtor.**

**Dennis L. KUCERA, Plaintiff,**

**v.**

**BANK OF BRAINARD, a/k/a First Nebraska Bank, Brainard, Defendant.**

**Bankruptcy No. BK86–522. Adv. No. A89–4082.**

United States Bankruptcy Court, D. Nebraska.

Dec. 28, 1990.

---

Vincent M. Powers, Lincoln, Neb., for debtor.

Michael C. Washburn, Omaha, Neb., for Bank of Brainard.

## MEMORANDUM

JOHN C. MINAHAN, Jr., Bankruptcy Judge.

This is an action to determine the validity, priority or extent of a lien in $3,917.02 of proceeds from the sale of corn. The defendant, Bank of Brainard, holds posses-sion of the funds which plaintiff, debtor, asserts should be turned over to him. The parties have submitted this matter to the court for decision upon a stipulation of facts.

Debtor filed a bankruptcy case under Chapter 13 in September 1984 and converted the case to a Chapter 11 in January 1985. A Chapter 11 plan was never confirmed and the case was dismissed on February 1, 1986 upon motion by the debtor. On February 26, 1986, debtor filed the present bankruptcy under Chapter 11. The Bank claims a duly perfected security interest in the stored grain of the debtor and all proceeds thereof. The parties have stipulated that on September 23 and 24, 1985 debtor sold corn which had been both planted and harvested in 1985 during the pendency of the predecessor bankruptcy case. The buyer was aware that the Bank claimed an interest in the corn and, on October 9, 1985, the buyer delivered the $3,917.02 purchase money to Mr. Yost, buyer's attorney, rather than to the debtor or the Bank. On January 7, 1987, Mr. Yost delivered the $3,917.02 proceeds to the Bank under a hold harmless agreement. The funds are currently held by the Bank in an escrow account pending the resolution of this litigation.

### Discussion

Debtor contends that the security interest of the Bank did not attach to the corn or its proceeds because the corn was planted, harvested and sold during the pendency of the predecessor bankruptcy case,

■ Generally, property acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case. 11 U.S.C. § 552(a). Although there are several exceptions to this general rule, *See* 11 U.S.C. § 552(b), none of the exceptions apply in this case. The Bank's security interest was granted before the previous case was filed and the corn was planted after the case was filed. The corn crop was thus after acquired property to which the bank's prepetition

security interest could not attach under § 552(a). As a preliminary matter, I thus conclude that during the pendency of the predecessor bankruptcy case, the Bank's security interest did not attach to the corn and it did not attach to the proceeds of the corn. This conclusion does not resolve the matter, however, as we must determine the effect of dismissal of the predecessor bankruptcy case.

The Bank contends its rights should be determined as if the predecessor bankruptcy case had never been filed. The Bank relies on 11 U.S.C. § 349(b) and its comments. Under that section dismissal of a bankruptcy case reinstates any proceeding or custodianship that was superseded by the bankruptcy case, reinstates avoided transfers, reinstates avoided liens, vacates any order, judgment or transfer ordered as a result of the avoidance of a transfer, and revests the property of the estate in the entity in which the property was vested at the commencement of the case. 11 U.S.C. § 349(b). Thus, argues the Bank, dismissal of the predecessor bankruptcy case revested all property of the estate in the debtor, and the Bank's security interest in the debtor's 1985 corn and corn proceeds is now enforceable.

Absent a confirmed Chapter 11 plan at the time of dismissal, § 349(b) basically restores parties to the position they would have had if the bankruptcy case had not been filed. For example, dismissal reinstates any transfers avoided under §§ 522, 544, 545, 547, 548, 549, or 724(a). However, § 349 does not refer to § 552 and thus does not explicitly provide that prepetition liens can attach to property acquired after the bankruptcy case was filed. The lack of reference to § 552 has led some courts to conclude that prepetition security interests do not attach to property that was acquired during the pendency of the bankruptcy case even after the case is dismissed. *In re Newton*, 64 B.R. 790 (Bankr. C.D.Ill.1986); *In re Depew*, 115 B.R. 965 (Bankr.N.D.Ind.1989). These courts conclude that § 349(b) affects only those sections of the Bankruptcy Code to which it specifically refers. *In re Newton, supra* at 793; *In re Depew, supra* at 971. In *In re Newton*, a farmer had planted, harvested and sold his 1984 crop after the bankruptcy case was commenced. Under § 552, the court concluded that a lien granted by a prepetition security agreement did not attach to the 1984 crop. The court also concluded that dismissal of the bankruptcy case did not change the result because § 349(b) does not specifically refer to § 552. Although the result *In re Newton*, was arguably equitable because it permitted a good faith purchaser of the crop to prevail over a prepetition lien in after acquired property, I respectfully disagree with the court's interpretation of § 552.

■ Under § 349, all property of the bankruptcy estate vests in the debtor upon dismissal of the case. While the bankruptcy case was pending § 552 provides, with some exception, that property of the estate acquired during the pendency of the case will not be subject to prepetition security interests. However, once the bankruptcy case is dismissed, § 552 is no longer effective. I conclude that § 552 simply suspends operation of an after acquired property clause during the pendency of the bankruptcy case. If a plan of reorganization is confirmed, the rights of secured creditors in property acquired during the pendency of the Chapter 11 case will be determined by the terms of the plan. If the case is dismissed before confirmation, as in the instant case, the rights of prepetition secured creditors in property acquired during the pendency of the case should be determined as if the bankruptcy case had never been filed, unless otherwise ordered by the court under its broad authority under §§ 349 and 105.

This result is supported by several considerations. First, once the bankruptcy case is dismissed the rights of creditors and debtors should be determined by state law. In this context, there is no identifiable federal interest in voiding an after acquired property clause that is specifically validated by state law. See U.C.C. § 9–204. Further, state law comprehensively deals with the enforceability and priority of security interests and, therefore, should be controlling.

Second, as a matter of federal law, § 552 is part of a carefully balanced statutory scheme in which a secured creditor is deprived of its interest in after acquired property, but is assured that its interest in collateral will be adequately protected both before and after confirmation of a plan. *See In re Blackwelder Furniture Co. of Statesville,* 31 B.R. 878 (Bankr.W.D.N.C. 1983); *see also* 11 U.S.C. §§ 361, 362, 363, 364, and 1129. It would be inequitable and perhaps unconstitutional to deprive the secured creditor of its interest in after acquired property without providing adequate protection. In short, as a matter of federal law, it makes no sense to give § 552 any force or effect after dismissal of a bankruptcy case. If § 552 were given effect after dismissal, debtors would be benefited by receiving property free and clear of liens. This is contrary to state law; it deprives the secured creditor of an interest enforceable under state law, and it would provide debtor an incentive to file and dismiss bankruptcy cases in order to invalidate after acquired property clauses.

Third, the fact that § 349 does not specifically refer to § 552 is not as much of a problem as some courts have concluded. Section 349 does not need to refer to § 552 because § 349 specifically provides that property of the estate vests in the debtor upon dismissal. After dismissal, § 552 ceases to apply. Upon dismissal, debtor obtains rights in the property of the estate and, under state law, security interests under Article 9 of the Uniform Commercial Code may attach to the debtor's interest. So construed, § 552 simply suspends operation of an after acquired property clause (*see* U.C.C. § 9-204) during the pendency of the case. It does not preclude post-dismissal attachment of a pre-bankruptcy petition security interest. *See In re Blackwelder Furniture Co. of Statesville,* 31 B.R. 878 (Bankr.W.D.N.C.1983) (stating that § 552(a) merely suspends the operation of an after acquired property clause upon the filing of the petition).

■ These observations, however, do not resolve the issue before the court. Here, we are concerned with the cash proceeds of after acquired property which was sold during the pendency of the bankruptcy case. At the time of sale the after acquired property was free and clear of prepetition liens under § 552. Thus, upon dismissal, only the cash proceeds of the after acquired property vested in the debtor. I conclude that this distinction is not important and that the Bank should prevail. Absent a court order to the contrary and absent a confirmed plan, the rights of the Bank should be determined as if the bankruptcy case had not been filed. The Bank was granted a lien in crops and the funds in dispute are the identifiable proceeds of the Bank's collateral. Under U.C.C. § 9-306, the Bank has a security interest in the proceeds.

Because I have concluded that the Bank holds a duly perfected lien on the $3,917.02 of proceeds from the sale of debtor's 1985 corn, it is unnecessary to rule on the Bank's second argument that the description of proceeds was sufficient to grant the bank a lien in the proceeds without ever obtaining an interest in the grain. I have also not addressed the issue of whether the Bank's interest in the proceeds is avoidable as a preference due to debtor's subsequent filing of this bankruptcy case. That question is not before the court. A separate order in conformity herewith will be entered.

### ORDER

Based on the reasons set forth in the court's memorandum of today's date entered contemporaneously herewith,

IT IS ORDERED, ADJUDGED AND DECREED, that defendant, Bank of Brainard, has a duly perfected lien on the $3,917.02 of proceeds from the sale of debtor's 1985 corn.